
# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 75963-9-I |
| Respondent, | ) | |
| | ) | DIVISION ONE |
| v. | ) | |
| | ) | UNPUBLISHED OPINION |
| TRAYVON R. CAIL, | ) | |
| | ) | |
| Appellant. | ) | FILED: April 23, 2018 |

TRICKEY, J. — The trial court convicted Trayvon Cail of first degree attempted murder, first degree murder, and first degree robbery, all while armed with a firearm. On appeal, Cail argues that the trial court erroneously excluded evidence of his lack of consciousness of guilt and that the prosecutor committed misconduct. Finding no error, we affirm.

## FACTS

Jermaine Smith and David Fashaw were both shot in the head in an attempted robbery that occurred during a drug transaction. Fashaw died at the scene. Smith survived and provided the police with information that eventually led to Cail's arrest.

Cail was arrested in Los Angeles, California. King County Sheriff's Department Detectives John Pavlovich and Eleanor Broggi interviewed Cail at the offices of the Los Angeles Police Department Robbery Homicide Division. During

the interview, Cail believed that the detectives wanted to talk with him about an unrelated drug crime.

The State charged Cail with first degree attempted murder, first degree murder, and first degree robbery, all with firearm enhancements, based on the Smith and Fashaw shooting. Cail waived his right to a jury and his case proceeded to a bench trial.

Cail sought to introduce statements from his interview with Detectives Pavlovich and Broggi that demonstrated his belief that the interview pertained to an unrelated drug crime. He argued that his statements indicated his state of mind. The trial court denied this request because Cail's state of mind at the time of the police interview was not at issue in the case.

During trial, the issue arose whether Cail was right- or left-handed. According to Smith, the shooter was right-handed. Cail initially told Detective Pavlovich that he was left-handed. The State attempted to prove that Cail was right-handed.

The State introduced a handwritten letter that Cail had written while in jail. The letter was to a person named Alicia Wilson. The State then asked Cail to write the name for a handwriting comparison. Cail began writing with his left hand and then switched to his right hand. Cail testified that he was ambidextrous.

The State asked Cail whether he had used his right hand to write the letter from jail, to which Cail replied that he did not know which hand he had used. The State then pointed out that the handwriting in the letter and the name written in

court looked different, "like a second grader versus an adult."[1] Cail acknowledged that the writing looked different. The State suggested that the difference in the writing was due to the fact that Cail was not left-handed. Cail did not object to this line of questioning.

The State also referred to a diagram that Cail had drawn to show that Cail was pretending to be left-handed. At the beginning of his testimony, Cail was directed to draw a diagram of the Los Angeles neighborhood in which he was raised. Later, the State referred to this drawing as "sad" while attempting to establish that Cail was right-handed.[2]

The State noted that Cail would benefit from convincing the trial court that he was left-handed, and then asked, "And that's why you used your left hand to draw this kind of sad diagram up here; right?"[3] Cail objected to the form of the question and the trial court sustained the objection and told the State to rephrase without using "sad."[4] Cail answered that the writing in the diagram and the jail letter looked the same, to which the State replied, "[w]e'll let the Judge decide that."[5] Cail made no further objections to this line of questioning.

Also during the trial, the State made several additional remarks about the trier of fact's role in interpreting the evidence. In response to questions about the contents of a jail telephone call, Cail testified that he was talking to his brother about a basketball game, not speaking in code about a witness in the case. Cail

---

[1] Report of Proceedings (RP) (June 28, 2016) at 1635.
[2] RP (June 28, 2016) at 1636.
[3] RP (June 28, 2016) at 1636.
[4] RP (June 28, 2016) at 1636.
[5] RP (June 28, 2016) at 1637.

said, "[y]ou're interpreting it wrong."[6] The State responded, "[w]e'll let the Trier of Fact interpret it wrong then."[7] Cail objected and the trial court sustained the objection.[8] In the same line of questions, the State reiterated, "I guess that's for the Trier of Fact to determine."[9] Once again, Cail objected and the trial court sustained the objection.

After several days of testimony, the trial court found that Cail's testimony was not credible and that the testimony of the State's witnesses was credible. Cail was convicted as charged.

Cail appeals.

## ANALYSIS

### ER 803(a)(3)

Cail claims the trial court erred by excluding evidence that he believed that his arrest pertained to his involvement in an unrelated drug crime, rather than the shooting. Specifically, Cail argues that this evidence demonstrated his lack of consciousness of guilt at the time of his interview with Detectives Pavlovich and Broggi. The State objected to this evidence as self-serving hearsay. Because Cail's state of mind at the time of his interview was not at issue in the case, we conclude that the trial court did not err in excluding this evidence.

"'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted," and is not admissible except as provided by the evidentiary rules or

---

[6] RP (June 28, 2016) at 1711-12.
[7] RP (June 28, 2016) at 1712.
[8] RP (June 28, 2016) at 1712.
[9] RP (June 28, 2016) at 1714.

statutes. ER 801(c); ER 802. "A statement of the declarant's then existing state of mind" is admissible as an exception to the general hearsay rule. ER 803(a)(3). "'[T]hen' in the term 'then-existing' refers to the time the statement was made, not the earlier time the statement describes." State v. Sanchez-Guillen, 135 Wn. App. 636, 646, 145 P.3d 406 (2006). While statements offered as circumstantial evidence of the declarant's state of mind are not hearsay, they must be relevant to be admissible. State v. Stubsjoen, 48 Wn. App. 139, 146, 738 P.2d 306 (1987).

A trial court's decision on the admissibility of evidence is reviewed for abuse of discretion. State v. Dobbs, 180 Wn.2d 1, 10, 320 P.3d 705 (2014). "A trial court abuses its discretion when its decision 'is manifestly unreasonable or based upon untenable grounds or reasons.'" Dobbs, 180 Wn.2d at 10 (quoting State v. Powell, 126 Wn.2d 244, 258, 893 P.2d 615 (1995)).

Here, Cail sought to introduce his initial statements from his interview with Detectives Pavlovich and Broggi as state-of-mind evidence to show a lack of consciousness of guilt. He claims that his mistaken belief that his arrest was for an unrelated drug crime demonstrated his ignorance of the shooting and, therefore, his innocence.

Cail acknowledges that his statements to Detectives Pavlovich and Broggi were a "then-existing" belief at the time of the interview, rather than at the time of the shooting.[10] Cail's state of mind at the time of his arrest was not an issue in the case. Whether Cail believed he was being questioned about an unrelated drug crime or the shooting has no bearing on his state of mind at the time of the

---

[10] Opening Br. of Appellant at 17.

5

shooting. The relevant state of mind was when the shooting occurred, not during a subsequent interview. See Stubsjoen, 48 Wn. App. at 146.

As a result, Cail's interview statements about an unrelated drug crime were not relevant and, therefore, not admissible.[11] A defendant's right to due process does not require admission of irrelevant evidence. State v. Jones, 168 Wn.2d 713, 720, 230 P.3d 576 (2010). Therefore, we conclude that the trial court did not abuse its discretion by excluding this evidence.

Prosecutorial Misconduct

Cail argues that the prosecutor committed misconduct during the bench trial. Specifically, Cail claims that the prosecutor improperly testified to evidence outside the record when she said that Cail had written the jail letter with his right hand and was clearly not left-handed. Cail also contends that the prosecutor made several improper remarks about the role of the trier of fact. We concluded that Cail has not established that the prosecutor's conduct was improper or ill-intentioned.

To prevail on a claim of prosecutorial misconduct, the defendant must prove that the prosecutor's comments were improper and prejudicial. State v. Yates, 161 Wn.2d 714, 774, 168 P.3d 359 (2007). "Any allegedly improper statements should be viewed within the context of the prosecutor's entire argument, the issues in the case, the evidence discussed in the argument, and the jury instructions." State v. Dhaliwal, 150 Wn.2d 559, 578, 79 P.3d 432 (2003).

---

[11] We also note that during trial Cail testified that he did not know about the shooting until the investigators arrested him. Cail's testimony pertains to the same evidence, that Cail had no knowledge of the shooting at the time of his interview. Therefore, any error in excluding the evidence of Cail's state of mind at the time of the interview would not have materially affected the outcome of the trial and was harmless. See State v. Gresham, 173 Wn.2d 405, 433, 269 P.3d 207 (2012).

Failure to object to a prosecuting attorney's improper remark constitutes a waiver of the error unless the remark is so flagrant and ill-intentioned that the resulting prejudice could not have been neutralized by a curative instruction. State v. Elmore, 139 Wn.2d 250, 292, 985 P.2d 289 (1999). Absent evidence to the contrary, we presume that the judge in a bench trial does not consider improper matters or inadmissible evidence in rendering a verdict. In re Det. of H.N., 188 Wn. App. 744, 765, 355 P.3d 294 (2015), review denied, 185 Wn.2d 1005, 366 P.3d 1244 (2016).

Cail objected to the prosecutor's reference to the "sad" diagram and statements concerning the role of the trier of fact. The trial court sustained the objections. Cail has not shown that the judge in this bench trial considered these improper statements after sustaining his objections to them. See In re Det. of H.N., 188 Wn. App. at 765. Therefore, Cail cannot demonstrate that the prosecutor's remarks had a prejudicial effect on the outcome of the trial.

Cail did not object to the State's line of questions about the jail letter and whether he wrote with his left or right hand. Due to this lack of objection, Cail must show that the prosecutor's statements were flagrant and ill-intentioned. See Elmore, 139 Wn.2d at 292. Cail makes no argument that the prosecutor's attempts to show that Cail was actually right-handed rose to this level. We find no prosecutorial misconduct.

### Credibility

Cail assigns error to the trial court's finding of fact 26 and conclusion of law 4 that his testimony was not credible and that the State's witnesses were credible.

7

Although he assigns error, Cail does not raise legal arguments pertaining to this assignment of error in his opening brief. An appellate court will not consider a claim of error that a party fails to support with legal arguments in its opening brief. See State v. Dennison, 115 Wn.2d 609, 629, 801 P.2d 193 (1990). Furthermore, credibility determinations are matters for the trier of fact and will not be reviewed on appeal. State v. Camarillo, 115 Wn.2d 60, 71, 794 P.2d 850 (1990). As a result, we decline to reach the merits of this claim.

Affirmed.

_Trickey, J_

WE CONCUR:

_Munn, A.C.T._

_Schindler, J_